UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| | ) | |
| DINÉ CITIZENS AGAINST RUINING OUR | ) | Case No. |
| ENVIRONMENT; TO' NIZHONI ANI; SIERRA | ) | |
| CLUB and NATIONAL PARKS | ) | |
| CONSERVATION ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| ARIZONA PUBLIC SERVICE COMPANY, | ) | |
| SOUTHERN CALIFORNIA EDISON; EL PASO | ) | |
| ELECTRIC COMPANY; PNM RESOURCES, | ) | |
| INC.; SALT RIVER PROJECT AGRICULTURAL | ) | |
| IMPROVEMENT AND POWER DISTRICT; and | ) | |
| TUCSON ELECTRIC POWER COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

1.      For nearly twenty-five years, the massive Four Corners Power Plant ("Four Corners")

has been evading its Clean Air Act ("Act") obligations and, as a result, emitting illegal amounts of

harmful air pollution.  Plaintiffs—a coalition of local environmental justice groups and conservation

groups—bring suit in the public interest to abate this illegal air pollution, which is taking an

unacceptable toll on people's health and the natural environment.

2.      It is past time for Defendants[1] (collectively "APS") to clean up this old, dirty plant.

Major sources of pollution must invest in state-of-the-art pollution controls when they undertake

upgrades that increase air emissions.  When Congress passed  the Clean Air Act Amendments of

1977, it recognized that existing facilities would someday have to retrofit or "modify" to keep

---

[1] Defendants are: Arizona Public Service ("APS"), Southern California Edison, El Paso Electric
Company, PNM Resources, Salt River Project Agricultural Improvement and Power District, and
Tucson Electric Power Company.

running, and it made clear that these "grandfathered" facilities would at last have to meet protective

emissions limits.  APS, however, has extended the life of the Four Corners plant and expanded its

capacity without investing in modern pollution controls. APS has made two sets of modifications to

the plant that significantly increased its pollution load without obtaining construction permits and

without installing the pollution control technology required by the Act.  APS's illegal and

unpermitted modifications harm Plaintiffs' members as well as the public at large.

3.      With a generating capacity of over two thousand megawatts, Four Corners is one of

the nation's largest coal-fired power plants; It is also one of the largest polluters.  The burden of its

pollution disproportionately falls on the residents of the Navajo Nation, where the plant is located.

Addressing the health risks posed by Four Corners' illegal pollution is critically important for this

community, which suffers from elevated rates of respiratory ailments and other diseases on  the one

hand and inadequate access to health care on the other.

4.      According to the U.S. Environmental Protection Agency ("EPA"),  the plant's

pollution also contributes to haze that mars premier national parks and wilderness areas, including

the Grand Canyon.

5.      Unless and until Defendants are forced to meet their obligations under the Clean Air

Act, public health, scenic vistas, and the environment will continue to suffer.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

6.      This court has subject matter jurisdiction under the Clean Air Act, 42 U.S.C. § 7604

(citizen suit provision), and the federal jurisdiction statute, 28 U.S.C. § 1331 (federal question

jurisdiction).  The relief requested is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§

2201-2202 (creation of remedy and further relief for declaratory judgments) .

7.      The violations complained of occurred and continue to occur in the part of the Navajo

Nation that is within the State of New Mexico.  Venue is therefore proper in the District of New

Mexico, pursuant to the Clean Air Act, 42 U.S.C. § 7604(c)(1), and the federal venue statute, 28 U.S.C. § 1391(b)-(c).

8.      None of the relevant governmental entities, including the Environmental Protection Agency ("EPA"), the State of New Mexico, and the Navajo Nation, have commenced or diligently prosecuted a court action to redress these ongoing violations.

9.      A copy of this complaint, pursuant to the Clean Air Act's citizen suit provisions, 42 U.S.C. § 7604(c)(3), is being served simultaneously upon the Attorney General of the United States and the EPA Administrator.

10.     No prior notice is required to assert the legal claims set forth below.  42 U.S.C. § 7604(a)(3).

**PARTIES**

11.     Plaintiff Diné Citizens Against Ruining Our Environment (Diné CARE) is an all-Navajo environmental organization that is based within the Navajo Nation.  It strives to educate and to advocate for traditional teachings and to protect and provide a voice for all life in the Four Sacred Mountains.  Diné CARE promotes uses of natural resources that are consistent with the Diné philosophy of Beauty Way.  The organization's main goal is to empower local and traditional people to organize, speak out and determine their own destinies.   Members of Diné CARE members reside, visit, work and/or recreate near Four Corners and are exposed to the Four Corners' emissions.  The aesthetic, recreational, environmental, economic and health-related interests of Diné CARE's members have been injured by Defendants' illegal and excessive emissions of pollutants from Four Corners into the surrounding air.

12.     Plaintiff To' Nizhoni Ani  ("TNA") was established in 2001 in response to the need to formally organize for the purpose of sustaining the grassroots efforts on Black Mesa against mining and power companies that adversely affect the environmental and quality of life of the

Navajo people.  The goal of TNA is to protect and preserve the natural resources of the Black Mesa

region so that the culture,  language, and way of life of the Dine' (Navajo) people can survive and

thrive.  One of TNA's main objectives is to reduce fossil-fuel related pollution and encourage

sustainable energy projects in the Navajo Nation so that quality of life for people in the region may

improve.

13.     Plaintiff Sierra Club was founded in 1872 by John Muir and is a nonprofit corporation

organized under California law.  It is one of the oldest and largest grassroots environmental

organizations in the country.  The Sierra Club has hundreds of thousands of members throughout the

country, over 7,600 of whom reside in New Mexico.  Among the goals of the Sierra Club are

preserving and enhancing the natural environment and protecting public health.  The Sierra Club has

the specific goal of improving outdoor air quality.

14.     Members of the Sierra Club use the resources of the New Mexico airshed impacted

by Defendants' violations of the Act.  These members reside, visit, work and recreate near Four

Corners and are exposed to the Four Corner's emissions.  The aesthetic, recreational, environmental,

economic and health-related interests of Sierra Club's members have been injured by Defendants'

illegal and excessive emissions of pollutants from Four Corners into the surrounding air.

15.     Plaintiff National Parks Conservation Association ("NPCA") is a nonpartisan,

nonprofit, conservation organization dedicated to protecting and enhancing America's National Park

System for present and future generations. NPCA was established in 1919 and today has

approximately 325,000 members around the United States, including 3,168 in New Mexico, who

care deeply about the well-being of the nation's national parks. One of NPCA's priorities is to

protect our national parks from the damaging impacts of air pollution.

16.     As a result of the Defendants' failure to properly control the pollution from Four

Corners, Plaintiffs, and their members are exposed to harmful air pollution that can cause acute and

chronic health impacts.  This pollution also impairs visibility in surrounding national parks and

wilderness areas, thereby adversely affecting Plaintiffs' enjoyment of these areas.  This pollution

would be controlled if Four Corners were required to comply with the Clean Air Act.  An injunction

from this Court requiring Four Corners to comply with the Clean Air Act would  remedy the harm

faced by Plaintiffs and their members.

17.     Defendant Arizona Public Service Company ("APS") is an owner as well as the

operator of Four Corners.  APS is a corporation organized and existing under the laws of the State of

Arizona, is qualified to do business in New Mexico and is doing business in New Mexico through its

ownership and operation of Four Corners.  Plaintiffs are informed and believe, and thereupon allege

that APS is a wholly-owned direct or indirect subsidiary of Pinnacle West Capital Corporation.

18.     Defendant Southern California Edison ("SCE") is an owner of Four Corners.  SCE is

a corporation organized and existing under the laws of the State of California and is doing business

in New Mexico through its ownership of Four Corners.

19.     Defendant El Paso Electric Company ("El Paso") is a corporation organized and

existing under the laws of the State of Texas and is doing business in New Mexico through its

ownership of Four Corners.

20.     Defendant PNM Resources, Inc. is a corporation organized and existing under the

laws of the State of New Mexico and is doing business in New Mexico through its ownership of

Four Corners.

21.     Defendant Salt River Project Agricultural Improvement and Power District ("Salt

River") is one of the owners of Four Corners and provides electricity to nearly 934,000 retail

customers in the Phoenix area.  Although it is a political subdivision of the State of Arizona, Salt

River is owned and operated by private individual landowners.  It cannot enact any laws governing

the conduct of citizens and does not administer normal functions of government.

22.     Tucson Electric Power Company is a corporation organized and existing under the laws of the State of Arizona and is doing business in New Mexico through its ownership of Four Corners.

## STATUTORY FRAMEWORK

23.     In 1973, Congress found "that the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation . . . ."  42 U.S.C. § 7401(a)(2).  On this basis, Congress passed the Clean Air Act to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population...." *Id*. § 7401(b)(1).

24.     One of the Act's basic strategies is to require permits for  construction of new major sources of pollution and for "major modifications" to existing major sources of air pollution.  *See id*. § 7470 *et seq.*  These so-called pre-construction permits must impose stringent emissions limits reflecting the performance of the best available pollution controls.  In this way, the permitting scheme is intended to achieve Congress' purposes "(1) to protect human health and welfare;" "(2) to preserve, protect, and enhance the air quality in national parks, national wilderness areas, … and other areas of special national or regional natural, recreational, scenic, or historic value"; and (3) to insure that economic growth will occur in a manner consistent with the preservation of existing clean air resources."  *Id*. §7470(1), (3).

25.     In areas including New Mexico, where air quality is either in attainment with the National Ambient Air Quality Standards  ("NAAQS") or unclassifiable, the goal of the Act's preconstruction requirements is to prevent any significant deterioration of air quality.  *Id.* § 7470(4).

26.     Under the Prevention of Significant Deterioration ("PSD") program, no "major emitting facility" may be constructed or undergo a "major modification" without first obtaining a PSD permit that imposes emissions limits based on the "best available control technology." *Id.* §§ 7475(a)(1), (4).

27.     A "major emitting facility" or "major stationary source" includes all "fossil fuel-fired steam electric plants of more than 250 million British thermal units per hour heat input" that "emit or have the potential to emit" over 100 tons per year of regulated pollutants.  42 U.S.C. § 7479(1); 40 C.F.R. 52.21(b)(3),(50).

28.     A "major modification" under the Act is a physical change or change in method of operation that results in significant net emission increases.  *See* 42 U.S.C. §§  7411(a), 7479(2)(C); 40 C.F.R. § 52.21(b)(2), (3), (23).

29.     "Best available control technology" means "an emissions limitation (including a visible emission standard) based on the maximum degree of reduction for each pollutant subject to regulation under Act which would be emitted from any proposed major stationary source or major modification which the Administrator, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such source or modification through application of production processes or available methods, systems, and techniques, including fuel cleaning or treatment or innovative fuel combustion techniques for control of such pollutant."  40 C.F.R. § 52.21(b)(12); *see also* 42 U.S.C. § 7479(3).

30.     When a major stationary source constructs a "major modification" without first obtaining a PSD permit, the Act empowers "any person" to seek a court order to compel the installation of BACT, and to seek penalties, among other remedies.  42 U.S.C. § 7604(a)(3).

7

## FACTUAL BACKGROUND

**Four Corners**

31.      Four Corners is one of the largest coal-fired generating stations in the United States. The plant's five units, the first of which went online in 1963, have a generating capacity of approximately 2,040 megawatts ("MW").  The plant, operated by APS, provides power to New Mexico, Arizona, California and Texas.

32.      Four Corners is also one of the  largest sources of air pollution in the country. According to the EPA's Clean Air Markets database, last year, the plant emitted over 38,000 tons of nitrogen oxide ("NOx") pollution, over 11,000 tons of sulfur dioxide pollution ("SO2"), and over 14 million tons of carbon dioxide.  The plant also emits significant amounts of particulate matter ("PM") and mercury, a neurotoxin.  The sheer scale of the plant's emissions, which reflect the severity of its ongoing air quality violations, raise major public health and environmental concerns.

**Pollution Impacts on Human Health**

33.      With respect to nitrogen oxide, ("NOx"), which also includes the pollutant nitrogen dioxide (NO2), Four Corner's emissions are higher than any other U.S. coal plant.  Current scientific evidence links short-term exposures to NOx with adverse respiratory effects including airway inflammation in healthy people and increased respiratory symptoms in people with asthma.[2]  These studies also show a connection between breathing during periods of elevated short-term NO2 concentrations and increased visits to emergency departments and hospital admissions for respiratory issues, especially asthma.[3]  Health-related impacts from human exposure to SO2 are also well-documented.[4]

---

[2] http://www.epa.gov/air/nitrogenoxides/health.html (last visited Sep. 23, 2011).

[3] *Id.*

[4] http://www.epa.gov/air/sulfurdioxide/health.html (last visited Sep. 23, 2011).

34.     PM, and especially fine particles, "contain microscopic solids or liquid droplets that are so small that they can get deep into the lungs and cause serious health problems."[5]  "Numerous scientific studies have linked particle pollution exposure to a variety of problems, including: increased respiratory symptoms …; decreased lung function; aggravated asthma; development of chronic bronchitis; irregular heartbeat; nonfatal heart attacks; and premature death in people with heart or lung disease."[6]

35.     Mercury from power plants also poses human health threats, especially to the very young.  Methylmercury emitted by American power plants "is associated with clinically significant mental retardation in hundreds of American babies born each year, and … this excess burden of mental retardation exacts a significant economic cost to American society, a cost that amounts to at least hundreds of million dollars each year."[7]

**Environmental Injustice**

36.     Four Corners is located near Shiprock, New Mexico, which is within the Navajo Nation.  As a result, the plant's pollution disproportionately affects the Navajo people.  Research published in 2010 reveals that among a cluster of 37 Navajo communities with an elevated prevalence of asthma, coughing and wheezing, pneumonia, upper respiratory tract infection, bronchitis, chronic obstructive pulmonary disease, the town of Shiprock ranked in the top ten for all of these reported diseases and/or conditions. [8]  The study further reported that Red Valley, which is situated west-southwest of Shiprock, ranked first for five of these seven diseases/conditions.[9]  The

---

[5] http://www.epa.gov/air/particlepollution/health.html (last visited Sep. 23, 2011).
[6] *Id.*
[7] Leonardo Trasande, et al., *Mental Retardation and Prenatal Methylmercury Toxicity*, 49 American Journal of Industrial Medicine 153, 156 (2006).
[8] Joseph E. Bunnel, et al., *Navajo Coal Combustion and Respiratory Health Near Shiprock, New Mexico*, The Journal of Environmental and Public Health, Article ID 260525, 1, 12(2010).
[9] *Id.*

study cites anecdotal evidence showing that power plant emission plumes often flow locally in the direction of Red Valley, especially during thermal atmospheric inversions.[10]

37.     The impact of Four Corners' illegal pollution on the surrounding community is particularly troubling given the high levels of poverty and the relative lack of access to health care services.  As the U.S. Commission on Civil Rights has recognized, "our nation's lengthy history of failing to keep its promises to Native Americans includes the failure of Congress to provide the resources necessary to create and maintain an effective health care system for Native Americans."[11]

**Impairment of National Parks and Wilderness Areas**

38.     The power plant's pollution not only raises public health concerns, but also adversely impacts air quality related values including visibility in our nation's national parks and wilderness areas.  In fact, the EPA identified 16 pristine "Class I" areas that are harmed by Four Corners' pollution.  These are:  Arches National Park (UT); Bandelier Wilderness (NM); Black Canyon of the Gunnison Wilderness (CO); Canyonlands National Park (UT); Capitol Reef National Park (UT); Grand Canyon National Park (AZ); Great Sand Dunes National Monument (CO); La Garita Wilderness (CO); Maroon Bells Snowmass Wilderness (CO); Mesa Verde National Park (CO); Pecos Wilderness (NM); Petrified Forest National Park (AZ); San Pedro Parks Wilderness (NM); West Elk Wilderness (CO); Weminuche Wilderness (CO); and Wheeler Peak Wilderness (NM).  *See* 75 Fed. Reg. at 64229-30 (2010).

39.     Illegal emissions of NOx, SO2, and PM from Four Corners dramatically impact visibility at these treasured national landmarks.  According to Defendant APS's own air modeling, the cumulative impact of Four Corners' current PM, NOx and SO2 emissions on visibility in these 16 "Class I" areas is more than 25 deciviews ("dV")  – or over 25 times greater than EPA's

---

[10] *Id*.

[11] http://www.usccr.gov/pubs/nahealth/nabroken.pdf (last visited Sep. 28, 2011); U.S. Commission on Civil Rights, *Broken Promises: Evaluating the Native American Health System* (2004).

causation threshold – on at least eight days every year.  The National Park Service has estimated the cumulative impact of Four Corners' emissions to be 46.58dV ( when its impacts to all 16 Class I areas are combined).

40.	In addition to obscuring park horizons, these same emissions have also been linked to a variety of other harms in national parks and the ecosystem.  For example, nitrogen oxides combine with other pollutants and sunlight to create ground level ozone, also known as smog.  Ozone makes sensitive plants more susceptible to diseases and damage, inhibits plant growth, and may impair biodiversity. Sulfur dioxide and nitrogen oxide emissions also create acid rain and nitrogen deposition which damages sensitive ecosystems and damages historical structures and monuments in national parks.  Acid rain is likewise responsible for weakening and killing plants and fish.

**Clean Air Act Violations**

41.	Four Corners has the potential to emit in excess of 100 tons per year of the following pollutants:  nitrogen oxides, sulfur dioxide, particulate matter and carbon dioxide.

42.	Defendants have made two sets of major modifications to the Four Corners that allow the facility to significantly increase its emissions of these pollutants without first obtaining a PSD permit.  The first set of modifications occurred in 1985-1986, when Defendants replaced the existing pulverizers at Units 4 and 5 of the plant with new Babcock & Wilcox pulverizers ("B&W- 89" or "B&W model MPS89").  As their name suggests, pulverizers crush coal into a powdery substance, which is then combusted for the purpose of producing steam, which, in turn, powers the turbine that generates electricity at each unit.

43.	The second set of modifications began in or around 2007 and are ongoing.  These more recent modifications constitute a massive retooling of Units 4 and 5 of the power plant.  The effect of the modification(s) was to extend the life and to increase the capacity of both of those units by upgrading and/or replacing key components of the boilers, turbines and generators.  This second

set of modifications includes, but is not limited to, the replacement of the high pressure turbines in

Units 4 and 5 of the power plant.  Plaintiffs are informed and believe, and thereupon allege, that

these high-pressure turbine upgrades increased the design-level heat input rate of each of these units,

thereby increasing each unit's generating capacity and its potential to emit air pollution.

44.      Defendants made these modifications without first obtaining appropriate permits

authorizing their construction, without meeting emission limits based on the "best available control

technology," and without installing appropriate technology to control nitrogen oxides, sulfur dioxide,

particulate matter, and other pollutants as required by the Act and its implementing regulations.

45.      As a result of Defendants' operation of Four Corners following those unlawful

modifications, and in the absence of appropriate controls, unlawful amounts of various pollutants

have been, and continue to be, released from Four Corners, aggravating air pollution locally as well

as far downwind of the plant.

46.      An order from this Court directing Defendants to obtain the required permits would

necessitate compliance with best available control technology limits, installation of modern pollution

controls, and a demonstration to the appropriate regulatory agencies that emissions from Four

Corners will not result in unlawful amounts of air pollution — improving air quality for thousands of

residents of the Navajo Nation and the State of New Mexico, including Plaintiffs' members.

Reduced air pollution will reduce health risks, improve visibility in Class I areas, and protect lakes

and streams from further degradation due to mercury deposition.

**FIRST CLAIM FOR RELIEF**
(Commencing Construction of a Major Modification Without a PSD Permit – Pulverizer
Replacements)

47.      Paragraphs 1- 46 are realleged and incorporated herein by reference.

48.      In or around 1985-1986, Defendants replaced approximately 18 pulverizers at Units 4

and 5 of the Four Corners.

49.     These 1985-1986 pulverizer replacements constituted a "major modification" under

the Clean Air Act.

50.     The above-mentioned pulverizer replacements were a physical change or change in

method of operation that resulted in a "significant" "net emission increase," of  sulfuric acid mist,

fluorides, lead, mercury, carbon monoxide, particulate matter, sulfur dioxide and/or nitrogen oxides

emissions, as defined in the version of 40 CFR § 52.21(b)(3) and (23) that was in effect at the

relevant time(s).

51.     Based on the foregoing, Defendants have violated 442 U.S.C. § 7475(a) of the Act by

failing to obtain the required PSD permit before commencing these pulverizer replacements.

52.     Defendants continue to violate 42 U.S.C. § 7475(a) of the Act by their continuing

failure to obtain the required PSD permit for these pulverizer replacements.  Unless restrained by an

order of this Court, these violations will continue at Four Corners.

53.     The PSD violations set forth above entitle Plaintiffs to declaratory and injunctive

relief and subject Defendants to civil penalties under 42 U.S.C. §§ 7413 and 7604.

**SECOND CLAIM FOR RELIEF**
(Commencing Construction of a Major Modification Without a PSD Permit – Retooling of Boilers,
and Turbines/Generators at Units 4 and 5)

54.     Paragraphs 1- 53 are realleged and incorporated herein by reference.

55.     Starting in or around 2007, Defendants began a massive retooling of Units 4 and 5 by

making major modifications to the boilers and turbine/generators of those units.  Plaintiffs are

informed and believe, and thereupon allege, that these modifications are ongoing.

56.     The modifications to the Unit 5 boiler include, but are not limited to: replacement of

the lower part of the furnace section;  replacement of the pendant reheater section, along with the

outlet header for that section; replacement of the horizontal reheater section; replacement of the first

stage pendant superheater section; replacement of the second stage pendant superheater section;

13

replacement of the nose portion of the furnace section; replacement of the baskets in the hot and cold ends of the air heaters associated with the boiler, and replacement and upgrade of pulverizers associated with the boiler by replacing and/or upgrading the classifiers.

57.     The modifications to the Unit 5 Turbine/Generator include, but are not limited to: replacement of the high pressure section of the main turbine, along with some or all of the turbine controls; replacement of the fourth-stage rows of blades in the low-pressure sections of the main turbine; replacement of one or more rows of blades in one of the low-pressure sections (section A) of the main turbine;  replacement of one or more rows of blades of the intermediate-pressure section of the main turbine; and rewinding of the rotor (field) in the generator that is associated with the low-pressure turbine.

58.     The modifications to the Unit 4 boiler include, but are not limited to:  replacement of the pendant reheater section and the outlet header for that section; replacement of the second stage pendant superheater section; replacement of the nose portion of the furnace section; replacement of the baskets in the hot and cold ends of the air heaters associated with the boiler; upgrade of the capacities of the pulverizers associated with the boiler; and upgrade of the pulverizers associated with the boiler by replacing and/or upgrading the classifiers.

59.     The modifications to the Unit 4 turbine/generator include, but are not limited to: replacement of the high pressure section of the main turbine, along with turbine controls; replacement of the fourth-stage rows of blades in the low-pressure sections of the main turbine; replacement of the second stage rows of blades in one of the low-pressure sections (section B) of the main turbine; replacement of one or more rows of blades in the intermediate-pressure section of the main turbine; rewinding of the rotor (field) in the generator associated with the high-pressure turbine; re-wedging of the generator associated with the low-pressure turbine; and replacement of one or more of the high-pressure feedwater heaters.

60.     The above-listed projects constituted "major modifications" under the Clean Air Act.

61.     The above-listed projects were physical changes or changes in method of operation that resulted in a "significant" "net emission increase," of sulfuric acid mist, fluorides, lead, mercury, carbon monoxide, particulate matter, sulfur dioxide and/or nitrogen oxides emissions, as defined in the version of 40 CFR § 52.21(b)(3) and (23) that was in effect at the relevant time(s).

62.     Based on the foregoing, Defendants have violated 42 U.S.C. § 7475(a) of the Act by failing to obtain the required PSD permit before commencing these projects.

63.     Defendants continue to violate 42 U.S.C. § 7475(a) of the Act by their continuing failure to obtain the required PSD permit for these projects.  Unless restrained by an order of this Court, these violations will continue at Four Corners.

64.     The PSD violations set forth above entitle Plaintiffs to declaratory and injunctive relief and subject Defendants to civil penalties under 42 U.S.C. §§ 7413 and 7604.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

A.     Declare that Defendants were required to obtain a PSD permit for the changes to Four Corners described above;

B.     Declare that Four Corners is a modified source for purposes of the Clean Air Act's PSD program;

C.     Enjoin Defendants from operating Four Corners unless and until Defendants apply for and obtain a lawfully-issued PSD permit;

D.     Order the Defendants to apply for permits that conform to the requirements of the PSD provisions of the Act for each modification that Defendants commenced without first obtaining a PSD permit;

15

E.      Order the Defendants to remedy their PSD violations by, *inter alia*, requiring

        Defendants to install, as appropriate, the necessary pollution controls to meet best

        available control technology emission limits;

F.      Order the Defendants to take appropriate actions to remedy, mitigate, and offset the

        harm to public health and the environmental caused by their violations of the Act

        alleged above;

G.      Order the Defendants to conduct audits of their operations to determine of any

        additional modifications have occurred that would require them to meet the PSD

        requirements and to report the results of these audits to Plaintiffs and the EPA;

H.      Order the Defendants to pay civil penalties under 42 U.S.C. §§ 7413and 7604, as

        adjusted by 40 C.F.R. § 19.4, including a beneficial mitigation project pursuant to 42

        U.S.C. § 7604(g)(2) that will decrease air pollution in the immediate vicinity of Four

        Corners where Plaintiffs' members live and recreate;

I.      Order the Defendants to pay Plaintiffs' costs of this action, including reasonable

        attorney fees, pursuant to 42 U.S.C. § 7604(d);

J.      Retain jurisdiction over this action to ensure compliance with the Court's order; and

K.      Provide any other relief that the Court finds just and equitable.

Dated: October 4, 2011                          Respectfully Submitted,

                                                /s/ Robin Cooley
                                                Robin Cooley (NM Bar #14626)
                                                Earthjustice
                                                1400 Glenarm Place, Suite 300
                                                Denver, CO  80202
                                                T: 303- 623-9466
                                                F:  303-623-8083
                                                E-mail:  rcooley@earthjustice.org

                                                /s/ Suma Peesapati
                                                Suma Peesapati (*pro hac vice* pending)
                                                (CA Bar # 203701)
                                                Earthjustice
                                                426 17th St., 5th Floor
                                                Oakland, CA 94612
                                                T: 510-550-6700
                                                F: 510-550-6740
                                                E-Mail:  speesapati@earthjustice.org

                                                Attorneys for Plaintiffs